LAND, Justice.
 

 This is an appeal from a decision of the judge of the Twenty-third Judicial District Court for the Parish of Ascension, dismissing a suit brought by plaintiffs against the defendants to set aside a tax sale of an undivided one-half interest in several tracts of land located in the Parish of Ascension. Many of the incidents which gave rise to the issues in the suit of Le Blanc et al. v. Babin et al., La.Sup., 2 So.2d 225,
 
 [1]
 
 are interwoven with those in the present suit.
 

 (1) Saul J. Gottlieb, a resident of East Baton Rouge Parish, on April 13,' 1926, acquired the following property: “An undivided one-half interest in and to: The West half of Section 4, and the Southeast quarter Section 4, Township 9, South Range
 
 2
 
 East, 490.95 acres, that part of Southeast one-fourth of Section 5, Township 9, South-Range 2 East lying in- Ascension Parish,. 162.40 acres, that part of West half Section-33, Township 8, South Range 2 East in Ascension Parish, 179.25 acres, approximately; the Southeast quarter of Section 33, Township 8, South Range 2 East, 162.78' acres, in the Southeast, East of River, Parish of Ascension, containing 995.38 acres, more or less, according to the official plat of the survey of said land in the State Land Office.”
 

 Jules Burton Le Blanc, Jesse Ernest Le Blanc and William Hardee Le Blanc own the other undivided one-half interest in the above described property.
 

 (2) Saul J. Gottlieb died on July 28, 1928. His succession was regularly opened in the parish of his domicile, East Baton Rouge, and a judgment was rendered on November 28,1928, recognizing the plaintiffs, Lewis Gottlieb and Mrs. Rosalie G. Moyse, his brother and sister, as his sole heirs, and placing them in possession of all of his estate, including specifically the property
 
 *807
 
 above described. A certified copy of this judgment was recorded in the office of the Clerk of Court of the Parish of Ascension on January 10, 1929, in Conveyance Book 69, page 210. On the 28th day of October, 1933, the defendants, Benton P. Babin, Andrew J. Babin and Wickliffe M. Babin, claim to have acquired the said property at a tax sale made in the matter of the “State of Louisiana against Delinquent Tax Debtors” for taxes due to the State and the Parish of Ascension for the year, 1932, assessed according to the assessment roll for the Parish of Ascension for the year, 1932, to “Heirs of Saul J. Gotlieb, Louis Gotlieb & Mrs. Rosalie G. Moise, Baton Rouge, La.” Tr. p. 197. And, according to the tax deed and the advertisement, assessed in the name of “Heirs of Saul J. Gotlieb.” Tr. pp. 191 and 197.
 

 (3) Plaintiffs attack said assessment as illegal, null and void because they had been placed in the possession of said property under a judgment regularly rendered by a competent court, on November 28, 1928, which had been filed and recorded legally and properly in the Conveyance Records of the Parish of Ascension on January 10, 1929, prior to the tax sale of said property to defendants on October 28, 1933, and because the names of plaintiffs, and even of their deceased brother, were improperly given on said assessment rolls.
 

 Plaintiffs contend that the only legal assessment that could be made was in the names of plaintiffs, who were record owners of the property on January 10, 1929, and at all times thereafter, and that the assessor of the Parish of Ascension was required to assess the property to them in their proper names.
 

 In our opinion, the contention of plaintiffs is correct. When the plaintiffs were placed in possession of this property by the judgment of the court, the succession of Saul J. Gottlieb was closed. Plaintiffs became the record owners of the property individually in their names of Lewis Gottlieb and Mrs. Rosalie G. Moyse. The assessment made to them as “Heirs of Saul J. Gotlieb” was an assessment to the Estate of Saul J. Gottlieb, which no longer existed.
 

 As said in the case of Hayes v. Viator, Sheriff, 33 La.Ann. 1162, at page 1165: “A proper assessment is essential to the validity of a tax sale. (Sutton v. Calhoun) 14 [La.]Ann. 209; (Woolfolk v. Fonbene) 15 [La].Ann. 15; (Marin v. Sheriff & City of New Orleans) 30 [La.]Ann. 293.”
 

 In the case of Norres v. Hays, 44 La.Ann. 907, 11 So. 462, the property which it was sought to recover had been sold at a tax sale under an assessment in the name of “Estate of William Hays.” In setting aside the sale the court used the following language at page 912 of 44 La.Ann., at page 463 of 11 So.: “The property was sold for taxes under Act 98 of 1886. It was assessed to the estate of William Hays. He resided and died in the parish of St. Mary. His heirs also resided there. The property was owned in indivisión by .several. There was, therefore, no valid assessment of the property upon which a sale could be made. It is elementary that the assessment is the basis of a judgment for the sale. Succession of Mercier, 42 La.Ann. [1135] 1139,
 
 *809
 
 8 So. 732 [11 L.R.A. 817]; Hayes, Administrator v. Viator, Sheriff, 33 La.Ann. 1162.”
 

 The property must be assessed in the name of the record owner. § 10 of Act No. 170 of 1898. This was not done in the present case.
 

 (4) Plaintiffs also contend that, in addition, the assessment was illegal, null and void in that said property was erroneously and improperly described as follows:
 

 No. of Acres
 

 497.69 245.47 Undiv.
 
 %
 
 Int. In W.% of Sec. 4 & S.E. %, Sec. 4-9-2.
 

 81.20 Undiv.
 
 y2
 
 Int. In S.E.
 
 yá,
 
 Sec. 5-9-2. '
 

 89.63 Undiv. Int. In W.y2, Sec. 33-8-2.
 

 81.39 Acs. Und. y2 Int. In S. E.%, Sec. 33-8-2.
 

 Lewis Gottlieb and Mrs. Rosalie G. Moyse were not recognized as the owners of any specific number of acres. Saul J. Gottlieb did not acquire any specific number of acres. Both he and they acquired an undivided one-half interest in and to a number of tracts of land.
 

 The property was not so assessed. Instead, a specific number of acres was given, and, in addition, in referring to the undivided one-half interest in the various tracts, a specific number of acres was given instead of an assessment of an undivided interest.
 

 Let us see now what the Supreme Court has had to say about the assessment of an undivided interest in real estate.
 

 In the case of Hayes v. Viator, Sheriff, 33 La.Ann. 1162, at pages 1164 and 1165, in annulling the sale, the court uses the following language: “It is unnecessary to consider all the alleged nullities set up in the plaintiff’s petition; we will notice those .only that have mainly influenced us in the conclusion we have reached.
 

 “We have given the description of the land as found in the deed, in order to show the discrepancy between the true description of it and that given in the tax proceedings relating to the same property, which latter description we transcribe literally from the record, as follows:
 

 “‘Hays David 800 b’ d’ N. Hollingsworth. S. Hayes W. Avery. Hayes M. 800 acres, b’ d’ N. Hollingsworth S. Hayes W. Avery.’
 

 “And under the heading of non-residents :
 

 “‘Hayes Wm. 800 acres b’ d. N. Hollingsworth S. Mass.’
 

 “This enigmatical, condensed and unique description is the one under which, it is alleged, the land is to be sold; and it is the same, with some very slight and immaterial variations, in all the assessment proceedings since 1871.
 

 “When it is considered that the property assessed and to be sold under this vague description, consisted of a plantation or land, as described in the deed referred to;
 
 that there had never been a partition of it, and each of the taxpayers held no definite number of acres, but an undivided interest in the entire tract,
 
 the vitally defective
 
 *811
 
 character of this description becomes obvious to every one.
 

 “The officer had no power to divide the lands for the purpose of
 
 sale, yet he offers to sell 800 acres as belonging Jo each one of the alleged delinquents. Should he find a purchaser or purchasers, how would he manage to put each of them in possession of 800 acres of land marked out and defined, in which no one else would have an interest but such purchaser? The assessment is the foundation of the proceedings relating to a tax sale. It is likened to a judgment which is the basis of a judicial sale. It would hardly be pretended that under a judgment against ‘A’ the sheriff could seize and sell a certain number of acres of a tract of land which ‘A,’ the judgment debtor, owned in indivisión with ‘33/ and make delivery of the same to the purchaser.
 
 It has been decided that he could not seise or sell a definite part or the whole of the land under such conditions.
 
 (Thomas v. Scott) 3 Rob. [256] 257; (Hughes v. Patterson) 23 [La.] Ann. [679] 681.
 
 And equally powerless would a tax collector be to sell under such an assessment as we have shown.
 

 “A proper assessment is essential to the validity of a tax sale. (Sutton v. Calhoun) 14 [La.] Ann. 209; (Woolfolk v. Fonbene) 15 [La.] Ann. 15; (Marin v. Sheriff & City of New Orleans) 30 [La.] Ann. 293.” (Italics ours.)
 

 The language used in this particular case fits the present case unequivocally. Lewis Gottlieb and Mrs. Rosalie G. Moyse did not own any specific acreage. They owned an undivided interest in certain designated tracts, yet they are assessed with a specific number of acres. The assessor had no authority whatever to divide up the tracts or to assign any given number of acres to them. He could not put a purchaser at tax sale in possession of any given portion of the property. The assessment, which is the basis of the eventual sale, was radically defective in assigning a given number of acres and, therefore, under the irrefutable reasoning in the Hayes-case, the assessment was not a legal basis, for the subsequent sale to the defendants, the Babins.
 

 (5) Plaintiffs also contend that the attempted sale was further null and void in. that, in violation of the provisions of Act No. 170 of the Legislature of 1898, and particularly Sections 50 and 51 thereof, as. amended, Act No. 194 of 1932, no demand for payment of the taxes, no notice of delinquency of the taxes, and no notice of' the intended tax sale was ever served upon-petitioners, or either of them, or forwarded to petitioners or either of them, or received by petitioners or either of them, although petitioners were the record owners-of the property at all times during the years-1932 and 1933, and were the taxpayers entitled to notice.
 

 Petitioners allege that defendants, contend that a notice of the delinquency of the taxes and of the intended tax sale was forwarded by registered mail by the sheriff of the Parish of Ascension, addressed to the ’’Heirs of Saul J. Gotlieb, Baton Rouge, La.,” and was receipted for by one Charles Richard. Plaintiffs aver that the said Charles Richard
 
 *813
 
 was not the representative nor agent of ■either of your petitioners, nor was he authorized in any way to act for your petitioners; that, if said notice was actually ■sent, then it was illegal, null and void and •of no .effect, in that petitioners were the property owners, the tax debtors and taxpayers, as fully shown by the judgment in the matter of the Succession of Saul J. ■Gottlieb, duly recorded as hereinbefore set forth, and that they, as such, were entitled to notice of delinquency and- of the intended tax sale, as provided by law.
 

 There is no doubt in this case that the notice of delinquency was made out and mailed by the sheriff and ex-officio tax ■collector of Ascension Parish to the “Heirs ■of Saul J. Gotlieb,” and not to the owners ■of record of the property, Lewis Gottlieb and Mrs. Rosalie Gottlieb, wife of Herman Moyse, residents of the City of Baton Rouge, La. It is so 'stated in the tax deed in this case. Tr. p. 191.
 

 Section 50 and Section 51, as amended, ■of Act No. 170 of 1898, read as follows: “Immovables — Notice to pay tax-Payment on separate parcels assessed as one. — On the second day of January, 1899, and each subsequent year, or as soon thereafter as possible, the tax collector or sheriff shall address
 
 to each tax-payer
 
 who has not paid all the taxes which have been assessed to him on immovable property, written or printed notice in the manner provided for in Section .51 that his taxes on immovable property must be paid within twenty days after the service or mailing of said notice, or that said property will be sold according to law * *
 

 “Immovables — Service of notice on taxpayer — Proces verbal — Fee—The State Tax Collector for the City of New Orleans as well as in other Parishes of this State, shall send to
 
 each taxpayer
 
 by registered mail the notice prescribed in Section 50 of this Act, provided that in Cities containing a population over fifty thousand persons the State Tax Collector or Ex-Officio State Tax Collector, may either send this notice by registered mail or may make a personal or domiciliary service on the taxpayer. After the State Tax Collector or Ex-Officio State Tax Collector shall have completed the service of the notices herein required, either by mail or by personal or domiciliary service,
 
 he shall make out a proces verbal stating therein the names of delinquents so notified, their post office addresses,
 
 a brief description of the property, the amount of taxes due
 
 and how the service of notice was made,
 
 which proces verbal shall be signed officially by him in the presence of two witnesses and filed in the office of the Clerk of Court in Parishes of this State other than the Parish of Orleans for recording and preservation, and in the Parish of Orleans shall be filed in the Office of the State Tax Collector for the City of New Orleans and preserved for record.
 
 Said Proces-verbal shall be received by the Courts as evidence.-
 
 The State Tax Collector for the City of New Orleans and the Ex-Officio State Tax Collector in other Parishes shall be entitled to collect from each delinquent taxpayer twenty-five
 
 (25‡)
 
 cents as costs for each notice served; no mileage to be charged for service of said notices, and a like charge if the property
 
 *815
 
 is adjudicated to the State or any sub-division thereof.” (Italics ours.)
 

 No such proces verbal was made by the sheriff and ex-officio tax collector of the Parish of Ascension in this case.
 

 The effect of non-compliance with this act was passed on by the Supreme Court in the case of Pill v. Morgan, 186 La. 329, 172 So. 409, and, as therein enunciated, was affirmed in the case of Hargrove v. Davis, La.App., 178 So. 198, 200, from which we quote the following: “Where the sheriff makes up and files in the office of the clerk of court the proces verbal of tax delinquents as required by the above-mentioned section of the revenue law, the presumption arises that notices of delinquency were served as therein stated, and the burden then rests on the tax debtor to show that no notice was given. But where no such proces verbal is filed as required by this section of the revenue law,
 
 the presumption as to the regularity of the tax deed is negatived and rebutted, and it then devolves on the tax purchaser to prove that all requisites for a valid tax sale, including notice of delinquency, zvere complied with.
 
 Pill v. Morgan et al., 186 La. 329, 172 So. 409.” (Italics ours.)
 

 Defendants have not only failed to prove that a notice of delinquency was forwarded to the tax debtors, Lewis Gottlieb and Mrs. Rosalie G. Moyse, as they were required to do, under the decisions above quoted, but plaintiffs have unequivocally established the fact that they did not receive any notice and that no notice was sent to them. Defendants did not prove that any agency whatever existed between the plaintiffs and Charles Richard and, on the contrary, plaintiffs showed distinctly that no such agency existed, Mrs. Moyse not even knowing Charles Richard and Mr. Gottlieb being unable to identify him by name.
 

 The fact is that Union Bond & Mortgage Co., Inc., of Baton Rouge, on July 27, 1933, directed to the Postmaster at Baton Rouge a written authorization “to deliver all registered mail
 
 addressed to Union Bond & Mortgage Co., Inc.,
 
 to the following persons only
 
 Florence Walsh¡ Charles Richard.”
 
 Tr. p. 95.
 

 Even admitting that defendants could go beyond the pleadings and claim an agency between plaintiffs and either Joe Gottlieb or the Union Bond & Mortgage Company, there is not one single line of testimony in the case to show that any such agency existed. No officer of the Union Bond & Mortgage Company, nor any one of the persons named, has testified or pretended that that company, or either one of them, was the agent of Lewis Gottlieb or of Mrs. Moyse, the alleged tax debtors, either for the payment of taxes, or for the receipt of notices for delinquent taxes due on the property of plaintiffs. Besides, the notice of delinquency of taxes due for the year, 1932, addressed to the “Heirs of Saul J. Gotlieb” by the sheriff and ex-officio tax collector of the Parish of Ascension, is null and void, as such notice does not contain the name of either of the record owners of the property, Lewis Gottlieb or Mrs. Rosalie Gottlieb Moyse. Adsit v. Park, 144 La. 934, 81 So. 430; McWilliams v. Gulf States Land & Improvement Co., 111 La. 194, 35
 
 *817
 
 So. 514; Sections 50 and 51 of Act No. 170 of 1898, as amended.
 

 (6) Defendants plead estoppel against the attack made by plaintiffs against the legality of the assessment of plaintiffs’ property in the name of “Heirs of Saul J. Gotlieb” for the year, 1932, as shown by tax deed at page 191 of the transcript. The grounds of the estoppel are that the assessor assessed the property in this manner for several years and plaintiffs, without complaint, paid the taxes; and at no time did plaintiffs file with the assessor an assessment list.
 

 It must also be remembered that the' notice of delinquency in this case is addressed to the “Heirs of Saul J. Gotlieb,” and is null and void because the names of neither Lewis Gottlieb nor of Mrs. Rosalie Gottlieb .Moyse, record owners of the property, are mentioned among the heirs of Saul J. Gottlieb.
 

 A property owner may be es-topped from annulling an assessment, pri- or to a tax sale, where he has previously allowed the assessment to appear consistently in an improper name,
 
 to Ms knowledge,
 
 as set forth in the review of the jurisprudence in the case of Adsit v. Park, 144 La. 934, 81 So. 430, but Mr. Justice O’Niell pointed out specifically that such an acquiescence would not have rendered valid a tax sale
 
 without notice
 
 to the actual owner of the property.
 

 Counsel
 
 for defendants
 
 cited this specific holding in their brief in the trial court as follows (Adsit v. Park, 144 La. 945, 946, 81 So. 434) : “The case of J. M. Guffey Petroleum Co. v. Murrel, Tax Collector, 127 La. 466, 53 So. 705, was. a proceeding by rule to annul an assessment and to prevent by injunction the tax collector’s selling the plaintiff’s property for taxes. One of the complaints was
 
 that the assessment was not in the name of the plaintiff corporation, the owner of the property.
 
 The error in the assessment consisted in calling the tax debt- or the Guffey Oil Company. The ruling was that, as the assessment had been made in that name for several years,
 
 to the knowledge of the plaintiff and without complaint,
 
 and as the plaintiff had ‘doubtless paid other taxes in that name,’ there was no equity or merit in the demand for an injunction or to have the assessment annulled. According to the doctrine stated in Hood v. City of New Orleans, rupra [49 La.Ann. 1461, 22 So. 401],
 
 the ruling would have been otherwise if the property had been sold for taxes assessed in the name of the Guffey Oil Company, without notice to the J. M. Guffey Petroletim Company.”
 
 (Italics ours.)
 

 In Adsit v. Park, 144 La. at pages 946, 947, 81 So. at page 434, the court also said: “Appellant pleaded in the district court, and urges the plea here, as an estoppel, that defendants should not be heard to complain that the assessment was made and notice given in the name ‘Park, Wilcox et al.,’ because, in 1909, the assessment was made in the name ‘Park, Wilcox, Warnsbrough and Park,’ and the taxes so assessed were paid.
 
 As was said in the cas*e of McCrory v. Bradford, supra
 
 [130 La. 212, 57 So. 892],
 
 there is no proof that the owners authorised the assessor to use only their surnames, in assessing the property in 1909.
 
 And, if
 
 *819
 
 they did, it would not operate as an estoppel to prevent their complaining of the assessment in the next following year being made in the name ‘Park, Wilcox et al.’
 
 Besides, the error in the assessment, in that respect, is not so serious as is the fact that the tax collector did not properly address the notice of delinquence to any of the owners of the property, and that, in consequence, they did not have notice before the sale.”
 
 (Italics ours.) And this is exactly what occurred in the instant case.
 

 (7)As in the nature of estoppel, defendants also declare in their answer that the assessment for the year, 1932, was as follows :
 

 “No. of acres
 

 497.69 245.47 Undiv. % Int. In W % of Sec. 4 & S E |4i Sec. 4-9-2.
 

 81.20 Undiv. % Int. In S E % Sec. 5-9-2.
 

 89.63 Undiv. % Int. In W % Sec. 33-8-21
 

 81.39 Acs. Undiv. % Int. In S E y4, Sec. 33-8-2.
 

 “and that this property was similarly assessed in the year 1931 under assessment No. 4110, and that plaintiffs did not file any assessment list during the year 1931 or 1932 or 1933 and paid the taxes for the year 1931 under the above assessment on October 25, 1932, and that plaintiffs do not own any other property in Ward Eight of the Parish of Ascension, or for that matter, do not own any other property in the entire parish of Ascension, Louisiana.”
 

 We have already shown that this assessment is illegal, null and void, under the authority of Hayes v. Viator, Sheriff, 33 La.Ann. 1162, and we challenge the citation of a single decision of this court that has ever held that the doctrine of equitable estoppel has been, or can he successfully pleaded, against assessments or notices of delinquency that are illegal, null and void.
 

 (8) In the present case, as well as in the companion case of Le Blanc et al. v. Babin et al., La.Sup., 2 So.2d 225,
 
 [1]
 
 defend-' ants filed an exception of no cause of action, based on the erroneous conception that plaintiffs had only three years in which to file suit to annul the tax sale, defendants having overlooked the fact that in the year, 1932, one year prior to the alleged sale, the Constitution of 1921 had been amended so as to permit a suit to be filed within five years after a tax sale. See Section 11 of Article X of the Constitution of 1921, as amended by Act No. 147 of 1932. Both exceptions of no cause of action were properly overruled in the district court.
 

 (9) In a suit to set aside a tax sale, tender in advance of the filing of suit is unnecessary, and failure to tender does not shift costs. This is true because Section 11 of Article X of the Constitution of 1921, as amended in 1932, provides that: “No judgment annulling a tax sale shall have effect until the price and all taxes and costs paid, with ten per cent per annum interest on the amount of the price and taxes paid from date of respective payments, be previously paid to the purchaser.”
 

 
 *821
 
 The amount of taxes due the defendants, in the event the tax sale is declared illegal, is stated in the b.rief of defendants at page 51 to be as follows:
 

 “Year Amount Date Paid
 

 1932 $40.20 (tax sale) October 28, 1933
 

 1933 $35.04 November 9, 1934
 

 1934 $31.79 April 12, 1935
 

 “For the above years, the assessment was carried in the name of plaintiffs and the interest is therefore due on the total amount. However, for the years that follow, the taxes were paid on the property as a whole, and, consequently, the interest is due on only half the amount shown below:
 

 'Year Amount Date Paid
 

 1935 $53.44 January 4, 1936
 

 1936 $53.44 March-13, 1937
 

 1937 $95.44 April 18, 1938
 

 1938 $98.44 December 28, 1938
 

 'The interest, as stated in the Constitution, is figured from the date on which the payments are made.”
 

 In order to clarify the situation as to the payment of taxes by the defendants, the Babins, it is necessary to state that the case of LeBlanc v. Babin, La.Sup., 2 So.2d 225,
 
 [1]
 
 is a companion case to-the case of Lewis Gottlieb et al. v. Benton P. Babin et al., No. 35,860, of the docket, and now on appeal to this court from the Twenty-third Judicial District Court for the Parish of Ascension. Both of the suits were instituted to set aside a tax sale to an undivided one-half interest to the property in dispute, the Le Blancs owning one undivided half interest, and Gottlieb et al., the other undivided half interest, and both of the sales took place on the same day. In both instances, the property was purchased by the defendants and appellees, Benton P. Babin, Andrew J. Babin and Wickliffe M. Babin and, in both cases, a judgment was rendered in favor of the defendants, dismissing plaintiffs’ suit and confirming and ratifying defendants’ title to the property in question.
 

 After defendants had acquired both halves of the property, or the entire property, they paid the taxes on the whole for years 1935, 1936, 1937 and 1938. Lewis Gottlieb, et al., would therefore owe defendants one-half of the taxes paid for these years, and would pay interest on that amount from the dates of the respective payments of the taxes.
 

 Having concluded that the assessment and tax notice in this case are both illegal, null and void, plaintiffs, Lewis Gottlieb and Mrs. Rosalie G. Moyse, are entitled to judgment against defendants as prayed for.
 

 It is therefore ordered, adjudged and decreed that the judgment appealed from by plaintiffs be annulled and reversed.
 

 It is. now ordered, adjudged and decreed that there be judgment in favor of plaintiffs, Lewis Gottlieb and Mrs. Rosalie G. Moyse, against defendants, Benton P. Ba-bin, Andrew J. Babin and Wickliffe M. Ba-bin, recognizing petitioners to be owners of the following described property: An undivided one-half interest in and to the west half of Section 4, and the southeast quarter of Section 4, Township 9, South Range 2 East, 490.95 acres, that part of southeast one-fourth Section 5, Township 9, South
 
 *823
 
 Range 2 East lying in Ascension Parish, 162.40 acres, that part of west half Section 33, Township 8, South Range 2 East in Ascension Parish, 179.25 acres, approximately; the southeast quarter of Section 33, Township 8, South Range 2 East, 162.78 acres, in the southeast, east of River, Parish of Ascension, containing 995.38 acres, more or less, according to the official plat of the survey of said land in the State Land Office, being the property acquired by vendor of the Board of Commissioners for the Pontchartrain Levee District by Patent No. L-103, March 29, 1926.
 

 It is further ordered, adjudged and decreed that the tax sale made to the defendants by the sheriff and ex-ofBcio tax collector of the Parish of Ascension, on the 28th day of October, 1933, for delinquent state and parish taxes for the year, 1932, and purporting to adjudicate to said defendants the following described property:
 

 245.47 Acs. Undiv. % int. in W. % of Sec. 4 and S. E. Sec. 4-9-2.
 

 81.20 Acs. Undiv. % int. in S. E. %, Sec. 5-9-2.
 

 89.63 Acs. Undiv. % int. in W. % of Sec. 33-8-2
 

 81.39 Acs. Undiv. % int. in S. E. %, Sec. 38-8-2
 

 be and the same is hereby annulled and ordered cancelled from Conveyance Book 73, Folio 73, of the Records of the Clerk’s Office of the Parish of Ascension, in which said sale is registered, said annulment to be effective upon payment to the defendants of the amount found to be due them under the provisions of Section 11 of Article X of the Constitution of Louisiana of 1921, as amended in 1932, or, in the event of the refusal of defendants to accept said amount, upon the said amount being deposited for them in the registry of the Twenty-third Judicial District Court for the Parish of Ascension.
 

 It is further ordered, adjudged and decreed that plaintiffs, Lewis Gottlieb and Mrs. Rosalie G. Moyse, pay to defendants, Benton P. Babin, Andrew J. Babin and Wickliffe M. Babin, adjudicates at said tax sale, and as provided in Section 11 of Article X of the Constitution of Louisiana of 1921, as amended in 1932, $40.20 with 10 per cent per annum interest thereon from October 28, 1933; $35.04 with 10 per cent per annum interest thereon from November 9, 1934; $31.79 with 10 per cent per annum interest thereon from April 12, 1935; $26.-72 with 10 per cent per annum interest thereon from January 4, 1936; $26.72 with 10 per cent per annum interest thereon from March 13, 1937; $47.72 with 10 per cent per annum interest thereon from April 18, 1938; and $49.22 with 10 per cent per annum interest thereon from December 28, 1938.
 

 Defendants are to pay the costs of appeal and of the district court.
 

 PONDER, J., absent.
 

 [1]
 

 197 La. 825.
 

 [1]
 

 197 La. 825.
 

 [1]
 

 197 La. 825.