This is a petitory action in which the plaintiff alleges ownership of the southwest quarter of the southeast quarter (S. W. 1/4 of S.E. 1/4), section 36, township 8 north (8 N.), range 8 west (8 W.), in Natchitoches Parish. It is further alleged that the defendants, J.C. Vines and Charlie Vines, are in possession of the land without title thereto and refuse to surrender possession thereof to plaintiff. It is charged that the defendants recently cut and removed hardwood and pine timber from the land of a value of $24.80. Judgment recognizing plaintiff as owner and entitled to the possession of the land, and for the sum of $24.80 against the defendants is prayed for.
Defendants deny that plaintiff is the owner of the land and aver that they are in lawful possession thereof and have cut a small quantity of timber therefrom. They allege that they purchased the land by warranty deed from Mrs. Fannie Lucas and *Page 827 
Isaac Lucas on September 16, 1942, and paid $400 cash therefor. They further aver that they have erected houses on the tract at a cost of $250, cleared part of the land at an expense of $30, and built a fence thereon at a cost of $20. They pray that Mrs. Fannie Lucas and Isaac Lucas be called in warranty and in the event they (defendants) are cast herein to any extent that like judgment be rendered in their favor and against said warrantors; and specifically pray for judgment in the sum of $700, representing the purchase price of said property and the cost of the improvements placed thereon. They do not pray for judgment against plaintiff for the cost of their improvements in the event plaintiff is decreed to be the owner of the land. The court ordered that the defendants' grantors be called in warranty and cited as such.
The warrantors answered, admitting the sale by them to defendants as alleged, and averred that through said sale defendants acquired valid title to the land involved. They alleged further that Mrs. Lucas acquired the land in October, 1936, in a partition with the heirs of Harris Simon, her deceased father, wherein said heirs warranted the title of the property so acquired to the extent of their interest therein, being 3/4; said heirs being H.L. Simon, Mrs. Mary E. Sachse and Mrs. Rachel Kaufman, all residents of the City of Alexandria, Louisiana.
Mr. and Mrs. Lucas prayed that the above named coheirs of Mrs. Lucas be called in warranty and cited as such, and, further, should there be judgment herein casting them to any extent, they pray for like judgment against the warrantors in the act of partition. The named coheirs of Mrs. Lucas were called in warranty by order of the court, and, answering, denied that plaintiff is owner of the property, but, on the contrary, aver that defendants are owners thereof. They admit that in the act of partition alleged upon by Mrs. Lucas, they warranted the title to the land which was allocated to her to the extent of their respective interests therein, being 1/4 each.
The defendants and all the warrantors specially pleaded the prescriptions of ten and thirty years acquirendi causa in bar of plaintiff's right to recover.
The pleas of prescription were overruled. There was judgment for plaintiff recognizing it to be the owner of the land and entitled to possession thereof and for the sum of $24.80, the admitted value of the timber cut by defendants. There was also judgment in favor of the defendants and against Mr. and Mrs. Lucas for said $24.80, and for the additional sum of $700, as prayed for by defendants. There was judgment in favor of Mr. and Mrs. Lucas and against H.L. Simon, Mrs. Mary E. Sachse and Mrs. Rachel Kaufman, condemning them to pay 3/4 of the amount of the judgment in favor of defendants and against Mr. and Mrs. Lucas and like proportion of the costs of suit. The court gave written reasons for judgment. The defendants and all the warrantors appealed.
Plaintiff deraigned title from the United States to the land in controversy by unbroken chain. Neither the defendants nor the warrantors disclosed in their answers the titles they rely upon to defeat plaintiff's action, save the deed to the defendants by Mr. and Mrs. Lucas and the partition between the heirs of Harris Simon, wherein the land was allotted to Mrs. Lucas. But, during trial, defendants and warrantors, without objection, introduced deeds of record that disclosed an unbroken chain of title from the entryman to the present defendants.
The land in controversy was entered from the United States by Allen Wheeler, September 30, 1858. He sold it to Nancy Jane Griswold and Silvestre W. Griswold, heirs of D. Hicks Pharris, on November 20, 1869, but the deed was not recorded until November, 1882. It is through this deed that defendants claim title.
The land was adjudicated to the State for delinquent taxes of 1882 and 1883 under assessments for those years, in the name of "Heirs of Allen Wheeler". Harris Simon for these years had recorded title to the lands. Plaintiff traces its title to these tax deeds. The tax sales were not referred to nor attacked in answers of the defendants or the warrantors. The deeds are assailed in briefs as being invalid on the ground that when made, the heirs of Allen Wheeler were not the record owners of the land. In support of this contention the following cases are cited and relied upon: Hayes v. Viator, Sheriff, et al., 33 La. Ann. 1162; Norres et al. v. Hays et al., 44 La. Ann. 907, 11 So. 462; Wilkerson v. Wyche et al., 158 La. 596,104 So. 381; Recker et al. v. Dupuy et al., 161 La. 392,108 So. 782; Gottlieb et at. v. Babin et al., 197 La. 802,2 So.2d 218; Martin v. Serice, 200 La. 556, 8 So.2d 538; Schwing Lumber Shingle *Page 828 
Co., Inc., et al. v. Board of Commissioners for Atchafalaya Basin Levee District et al., 202 La. 477, 12 So.2d 235.
These cases apply to tax sales, affected by irregularities and informalities, that were attacked before the constitutional peremption of five years validated the title regardless of the irregularities and/or informalities; and to tax sales of lands that were in the actual possession of the tax debtor, his heirs or assignees, at date of sale and thereafter. They do not apply to tax sales not falling within either of the above mentioned cases. See: Ashley Company, Ltd., v. Bradford et al.,109 La. 641, 33 So. 634; Board of Commissioners for Fifth Louisiana Levee District v. Concordia Land Timber Co., 141 La. 247, 74 So. 921; Griffing et al. v. Taft, 151 La. 442, 91 So. 832; Tillery v. Fuller et al., 190 La. 586, 182 So. 683; Board of Commissioners for Atchafalaya Basin Levee District v. Sperling et al., 205 La. 494, 17 So.2d 720; Yuges Realty, Ltd., v. Jefferson Parish Developers, Inc., 205 La. 1033, 18 So.2d 607, 609.
In this last case the court said: "This court has repeatedly held that, for the purpose of prescription under the Constitution, it is immaterial whether the assessment was made in the name of the true owner, or in the name of another, or in no name at all."
[1] The tax sales in question are presumed to have been regularly and legally made. Appellants do not allege that the taxes were paid by the then record owner prior to the date of the tax sales. They do argue that the land was in the physical possession of Harris Simon when the tax sales were made and that he and his heirs and their assignees have had such possession to the present time.
On November 20, 1869, Allen Wheeler, the entryman, sold the land involved herein, together with an 80 acre tract adjoining, in section 36, to S.W. and W.J. Griswold. On November 27, 1869, the Griswolds sold to Silas Shoubrook and Miller Dendy the lands they acquired from Miller, plus other lands in sections 25 and 36 adjacent to the three forties in section 36, that were acquired from Miller. On June 1, 1870, Shoubrook sold his interest in all the lands to Dendy, who, on November 6, 1871, sold and conveyed the lands to Harris Simon.
Sarah Simon, wife of Harris Simon, died intestate in the year 1890, and thereafter her heirs, issue of her marriage to Harris Simon, sold their respective interests in all the tracts to their father. The lands with many other tracts were inventoried in the mother's succession which was opened in Natchitoches Parish in May, 1890.
Harris Simon died intestate on January 24, 1910. The same lands were inventoried in his succession. By judgment of the District Court his heirs were recognized and sent into possession thereof, Mrs. Lucas being one of them.
In a partition between Mrs. Lucas and her coheirs on October 1, 1936, the west one-half of the southeast quarter (W. 1/2 of S.E. 1/4), section 36, township 8 North (8 N.), range 8 West (8 W.), and other lands were allotted to her. Prior to this transaction, on July 2, 1917, Mrs. Lucas' coheirs sold to Mr. Lucas their undivided interest in and to all the timber on the forty acres in contest, together with that on four additional forties in said section 36, all being contiguous, and on other tracts. On July 11, 1917, Lucas and wife sold to J. E. Seabaugh et al. the pine timber on the same tracts with three years to remove same.
Mr. Lucas married his wife October 25, 1893. At time of trial he was in his eightieth year, but his mind did not appear to be dimmed materially from the passing of so many years. After his marriage he became interested in and had contact, more or less, with the land holdings of Harris Simon, his father-in-law.
Mr. Lucas testified that the land in contest was part of the old Griswold Place. This name was bestowed by the people of the community because the Griswolds once owned and lived upon the lands. He did not know there was an adverse chain of title to the land in dispute until this suit was filed. He testified that the pine timber on the tract was cut under the deed he and his wife made to Seabaugh et al. and thereafter he sold ties and poles from the land, "up until the timber was all cut and up until the time of the division", referring to the partition through which Mrs. Lucas acquired the land. He further testified that when he first became well acquainted with the land, about the year 1890, there was a double house on it and part of it had been farmed. He says: "That was the old homestead of the Griswolds"; but the *Page 829 
fences around the field had pretty well rotted down. He detracted to some extent from the weight of his testimony by saying that the house was on a forty, one or one and one-half miles from the railroad track. The railway, he says, runs between section 36, township 8 North (8 N.), and section 1, township 7 North (7 N.), range 8 West (8 W.). He is evidently confused to some extent. It is probable the house and clearing about which he did testify were on another forty embraced in the Griswold tract. The north end of that tract is a mile or more from the railway line. He also testified that the land was annually assessed to Mr. Simon and taxes thereon paid by him.
Mr. W.M. Robinson, aged 67, has been woods foreman for plaintiff and the Weavers for forty years and held that position at date of trial. He was familiar with the land in dispute and other lands owned by the Simons in section 36. He testified that Seabaugh et al. cut the timber from the forty in dispute and from other lands adjacent. He knew that Mr. Lucas "looked after" the Simon lands, and was certain there was once a house on a forty that adjoined the southwest quarter of the southeast quarter (S.W. 1/4 of S.E. 1/4), section 36. When asked who owned this adjoining forty, he replied: "It was known as the Simon Tract."
[2, 3] From the foregoing epitome of the testimony bearing thereon, the conclusion may fairly be drawn that the Griswolds were in actual possession of some portion of the land they purchased from Miller, and whether or not they actually possessed the land in contest is immaterial because constructively they possessed that land also; and rights accruing and flowing from such possession were transmitted to their transferees and on down to the present defendants.
It is well known that during the time the Griswolds and their assignees, down to Harris Simon, owned the land, timber was of small value and had practically no influence upon investors. They primarily, if not exclusively, looked to the farming potentialities of the land itself.
Against these related acts of possession, actual and constructive, plaintiff offers no off-setting testimony except to say that after the Weavers purchased the land in 1928 they cut and removed the timber therefrom. Since the timber had been closely cut prior to this time by Seabaugh and Mr. Lucas, it is unlikely that in 1928 there remained much timber on the tract. It is not shown how the Weavers operated to cut and remove the timber that was on the land when they purchased it, the time it required to do so, and whether operations were continuous or intermittent. To merely say that they did cut and remove the timber does not necessarily imply that in doing so they took such possession of the land that would oust the possession which Harris Simon and his heirs had for one-half century and more prior thereto.
We would feel safe in presuming that Harris Simon, the record owner when the tax sales were made, was not given any sort of notice thereof prior to sale or thereafter, and to further hold that in view of his possession of the land and that of his heirs, and his assignees, at time of tax sale and thereafter, the Constitutional preemption of five years has no application. However, we prefer to pitch a decision of the issue of title upon the pleaded prescription of ten years. The following articles of the Civil Code are pertinent to the facts of the case, to-wit:
Article No. 3436:
"To be able to acquire possession of property, two distinct things are requisite:
"1. The intention of possessing as owner.
"2. The corporeal possession of the thing."
Article No. 3437: "It is not necessary, however, that a person wishing to take possession of an estate should pass over every part of it; it is sufficient if he enters on and occupies a part of the land, provided it be with the intention of possessing all that it included within the boundaries."
Article No. 3442: "When a person has once acquired possession of a thing by the corporal detention of it, the intention which he has of possessing, suffices to preserve the possession in him, although he may have ceased to have the thing in actual custody, either himself or by others. (As amended, Acts 1871, No. 87)."
Article No. 3443: "This intention of retaining possession is always supposed, where a contrary intention does not appear decidedly; so that, although a person may have abandoned the cultivation of his estate, he shall not therefore be presumed to have abandoned the possession, but shall *Page 830 
be presumed on the contrary to have the intention of retaining it, and shall retain it in fact."
Article No. 3492: "The actual possessor, when he proves that he has formerly been in possession, shall be presumed also to have been in possession in the intermediate time."
Article No. 3493: "The possessor is allowed to make the sum of possession necessary to prescribe, by adding to his own possession that of his author, in whatever manner he may have succeeded him, whether by an universal or particular, a lucrative or an onerous title."
Article No. 3494:
"By the word author in the preceding article, is understood the person from whom another derives his right, whether by an universal title, as by succession, or by particular title, as by sale, by donation, or any other title, onerous or gratuitous.
"Thus, in every species of prescription, the possession of the heir may be joined to that of the ancestor, and the possession of the buyer to that of the seller."
Article No. 3498: "When a person has a title and possession conformably to it, he is presumed to possess according to the title and to the full extent of its limits."
[4, 5] We have found and hold that the Griswolds actually possessed some of the lands described in their deed, and constructively possessed the remainder, including that in controversy. Harris Simon acquired from Dendy in 1871. It is highly probable he likewise went into actual possession because he engaged on a large scale in the acquisition of farm lands. Because of the long lapse of time, no witnesses could be found who knew more of the facts than did Mr. Lucas. But the old buildings and decayed fences about which he testified were mute but convincing evidence that at one time the lands were occupied and possessed. Such possession, when once established, as said by the Civil Code, continued, although actual possession had ceased. It is presumed that when a person once possesses land under title he desires to, and, in fact, does, continue to possess the same until he evinces an intention to abandon the possession.
[6, 7] Defendants are in good faith. The law permits them to tack on to their possession that which was exercised by others in their chain of title.
Since trial of this case Isaac Lucas died. By agreement his heirs were made parties to this suit in his stead. They are William L. Lucas, Mrs. Miriam Heller and Sidney A. Lucas, Jr., a minor, represented by Mrs. Miriam Heller, dative tutrix.
For the reasons assigned herein, the judgment appealed from is annulled, avoided and reversed, and plaintiff's suit is dismissed at its cost; and for said reasons, the plea of prescription of ten years filed by defendants and warrantors is sustained. It is, therefore, ordered, adjudged and decreed that defendants, J.C. Vines and Charlie Vines be, and they are hereby recognized as the owners of the land involved herein, to-wit:
Southwest quarter of southeast quarter (S.W. 1/4 of S.E. 1/4), section 36, township 8 North (8 N.), range 8 west (8 W.), in Natchitoches Parish, La., and they are hereby quieted in their possession of the same.
KENNON, J., takes no part.
 *Page 80